UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RUBEN ORLANDO BENITEZ                                              PLAINTIFF

VERSUS                                     CIVIL ACTION NO. 1:17CV233-HSO-RHW

JEFFEREY ATKINS                                                    DEFENDANT

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Plaintiff Ruben Orlando Benitez filed a complaint in the Circuit Court of Greene County, Mississippi alleging that Defendant Jeffrey Atkins violated his due process rights. Doc. [1-2]. On August 29, 2017, Defendant removed the action to federal court. Doc. [1]. Plaintiff is an inmate at the South Mississippi Correctional Institution (SMCI) serving a life sentence for murder. Doc. [5] at 13; Doc. [54-3] at 116. Defendant Atkins is an employee of the Office of the Clerk of the Supreme Court of the United States. Doc. [18] at 3. Plaintiff alleges that Atkins mishandled pleadings submitted by Plaintiff to the Supreme Court in conjunction with his motion to proceed *in forma pauperis* on a petition for *writ of certiorari*. Doc. [5] at 31-32. According to Plaintiff, Atkins prevented the proper judicial official from ruling on his application for rehearing. *Id.* Specifically, he alleges that Atkins improperly docketed Plaintiff's application for consideration by a single justice. Plaintiff alleges that, in doing so, Atkins abused his position resulting in the "closure" of Plaintiff's cause of action before the Supreme Court. *Id.* at 33. In support of his allegations, Plaintiff submitted affidavits from his wife and children who stated they witnessed a telephone conversation between Atkins and Plaintiff on September 30, 2016. According to the affiants, Atkins told Plaintiff he would not allow Plaintiff to get relief and was going to close his case. Doc. [35]. The affiants further stated that Atkins failed to

provide an explanation for his closing the case without further judicial review. *Id.* For consideration before the undersigned is Defendant's motion to dismiss and/or for summary judgment and Plaintiff's motion for summary judgment. Doc. [54] & [59].

## Law and Analysis

### Standard of Review

With respect to Defendant's motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

With respect to motions for summary judgment, Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Plaintiff's Motion for Summary Judgment**

In his motion for summary judgment, Plaintiff argues that a default judgment should be entered against Atkins. Doc. [60]. The Court already addressed the default issue in previous orders. *See* Doc. [32] & [71]. In sum, Defendant filed his answer within the time permitted by the Court. Accordingly, a default judgment would be improper.

Federal Rule of Civil Procedure 55 states: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." However, a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). Indeed, "[d]efault judgment is a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis*, 236 F.3d at 767 (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989)).

3

Therefore, as default judgments "are generally disfavored in the law," such judgments "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Lacy v. Sitel Corp.*, 227 F.3d 290 (5th Cir. 2000) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984). In deciding whether to grant default, "[r]elevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Shortly after removing the cause of action to federal court, Defendant sought and the Court granted an extension of time until October 5, 2017, to file an answer. Doc. [2]; Text Only Order (9/11/2017). The Court then granted Defendant an additional extension of time until October 12, 2017, to file his answer. Text Only Order (10/5/2017). In compliance with the Court's order, Defendant filed his answer on October 12, 2017. Doc. [18].

Plaintiff has argued repeatedly throughout this litigation that Defendant's answer was untimely merely because the Court did not grant Defendant's extension of time to answer until after the deadline to answer already had expired. Plaintiff is correct in two respects: (1) Defendant's answer was due originally on September 5, 2017; and (2) the Court did not grant Defendant's extension until September 11, 2017—after the deadline to answer. What Plaintiff fails to appreciate is that Defendant requested an extension of time to answer on August 30,

4

2017, well before the answer deadline.[1]  Doc. [2].  Hence, Defendant timely preserved his right to file an answer.

Rule 6(b) of the Federal Rules of Civil Procedure permits the court to extend the time for a party to comply with a deadline.  Defendant's protestations notwithstanding, the decision to grant an extension of time to answer, even after the deadline to answer has expired, is well within the Court's discretion.  *See Harris v. St. Louis Police Dep't*, 164 F.3d 1085, 1086 (8th Cir.1998) (per curiam) (concluding district court did not abuse its discretion in denying motion for default judgment where defendant filed late answer after obtaining extension from court to do so); *Fortenberry v. Texas*, 75 Fed. Appx. 924, 926 n. 1 (5th Cir. 2003) (holding that denial of motion for default judgment was not an abuse of discretion where the defendants filed their answer six days late and the plaintiff failed to show prejudice); *Rouser v. Johnson*, No. 94-30013, 1994 WL 523784, at *5 (5th Cir. 1994) (holding that denial of motion for default judgment was not an abuse of discretion where defendant obtained extension of time to answer and filed his answer within the period extended by the order).  The undersigned considered Defendant's motions for extension and concluded that the extensions were justified.  Defendant then filed his answer within the time allotted.  Plaintiff has failed to demonstrate the absence of a genuine issue of material fact on the issue of default.  Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied.

**Defendant's Motion for Summary Judgment**

In his motion for summary judgment, Defendant raises numerous grounds for dismissing Plaintiff's complaint.  The focus of Plaintiff's complaint is Defendant's decision to docket

---

[1] Immediately after Defendant filed his motion for extension of time, the United States Magistrate Judge originally assigned to the case entered an order of recusal.  *See* Doc. [3].  The undersigned became involved in this matter only after Defendant sought his extension of time to answer.

5

Plaintiff's "Application to Individual Justice Pursuant to USSC Rule 22" as a "Motion for Reconsideration", and the eventual denial of Plaintiff's *in forma pauperis* application, which resulted in the closing of his case before the Supreme Court. The undersigned concludes as a threshold matter that the Court lacks personal jurisdiction over Defendant. Although service on Defendant appears to be improper, as argued by Defendant, if this were the only flaw with Plaintiff's lawsuit, the undersigned likely would recommend granting Plaintiff the opportunity to effect proper service of process rather than dismissing the lawsuit outright. Regardless, Plaintiff's claims fail on the merits because Plaintiff has failed to state a constitutional or statutory claim against Defendant or, in the alternative, Defendant is entitled to qualified immunity for his actions.

**Personal Jurisdiction**

Defendant argues that the Court lacks personal jurisdiction over him in this matter. Plaintiff bears the burden of establishing personal jurisdiction by presenting prima facie evidence. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). Whether this Court may exercise personal jurisdiction over a non-resident defendant is a two-part analysis. *See ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 496-97 (5th Cir. 2012); *Horne v. Mobile Area Water & Sewer System*, 897 So.2d 972, 976 (Miss. 2004). First, the court must determine whether the non-resident defendant is amenable to suit here by virtue of Mississippi's long-arm statute, Miss. Code Ann. § 13-3-57. *Id.* Second, the court must determine whether exercise of jurisdiction over the non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

The Mississippi long-arm statute consists of three "prongs." *See Walker v. World Ins. Co.*, 289 F.Supp.2d 786, 788 (S.D.Miss. 2003). First, under the "contract prong", a non-resident

6

is subject to personal jurisdiction in Mississippi if the non-resident enters into a contract with a Mississippi resident that is to be at least partially performed in Mississippi. *Id.* Second, under the "tort prong" of the long-arm statute, a non-resident is subject to jurisdiction in Mississippi if the non-resident commits a tort in whole or in part in Mississippi, against a resident or a non-resident. *Id.* The third prong of the long-arm statute is the "doing business prong," under which a non-resident is subject to jurisdiction if it is conducting any type of business in Mississippi.

Plaintiff makes no effort to argue application of the tort prong to his case. Plaintiff alleges that his case before the Supreme Court did not receive proper consideration because of Defendant's actions at the clerk's office in Washington, DC. Thus, the tort prong does not apply because the alleged tort and injury occurred not in Mississippi, but in Washington, DC, at the Office of the Clerk of the United States Supreme Court. *See Horne v. Mobile Area Water & Sewer System*, 897 So.2d 972, 977 (Miss. 2004). Likewise, Plaintiff does not allege application of the "doing business prong", because he does not allege that Defendant conducts any type of business in Mississippi. *See Estate of Jones v. Phillips ex. rel Phillips*, 992 So.2d 1131, 1139 (Miss. 2008) (long-arm statute "applies to any person or corporation performing any character of work in this state.").

Plaintiff argues instead that the contract prong of the long-arm statute applies. He asserts that the notice and waiver mailed by the clerk's office to Mississippi Attorney General Jim Hood represent "contracts" between the Office of the Clerk of the United States Supreme Court and Plaintiff. The contract prong of the long-arm statute applies to a non-resident defendant if the non-resident defendant makes a contract with a resident of the state, any portion of which is to be performed in the state. Miss. Code Ann. § 13-3-57. Plaintiff fails to demonstrate how the cited notice and waiver satisfy the elements of a contract. Indeed, a review of the documents indicates

they lack essential elements of a contract, such as two or more contracting parties, consideration, or mutual assent. *See* Doc. [54-5] at 20, 28; *Rotenberry v. Hooker*, 864 So.2d 266, 270 (Miss. 2003) (reciting the elements of a valid contract). Even if by some stretch of logic the notice and waiver were deemed contracts, Defendant Atkins is not a party to either of these "contracts". His name does not appear on either the notice or the waiver as a "contracting" party.

Once analysis of the forum state's law has been completed, the Court next considers whether the exercise of jurisdiction over the defendant comports with due process. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The defendant's contacts with the forum state must also be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Personal jurisdiction can be general or specific. *Seiferth* 472 F.3d at 271. A court may exercise general jurisdiction over any action brought against a defendant if the defendant's contacts with the forum state are continuous and systematic. *Id.* Otherwise, a court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.*

Plaintiff argues that Defendant, by virtue of his position as a Clerk for the United States Supreme Court, has continuous and systematic contact with every state, including Mississippi, because he is responsible for oversight and distribution of notices and waivers to every petitioner submitting a petition for *writ of certiorari* to the Supreme Court. In essence, Plaintiff argues that Defendant's contacts with Mississippi confer general personal jurisdiction. Plaintiff has presented no summary judgment evidence demonstrating continuous and systematic contact by

8

Defendant with the forum state. Defendant's mere correspondence with Plaintiff and performance of administrative duties on behalf of the clerk's office in handling petitioners' appeals are not sufficient to support an exercise of specific or general personal jurisdiction. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that exchange of communications insufficient to constitute personal availment); *Sorrells v. R&R Custom Coach Works, Inc.*, 636 So.2d 668, 673-74 (Miss. 1994); *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."). Moreover, Defendant has not purposely availed himself of the privileges and benefits of conducting activities in Mississippi to subject himself to personal jurisdiction. *See Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012). Rather, Plaintiff's act of filing a petition for *writ of certiorari* with the Supreme Court brought Defendant into contact, albeit ever so slightly, with Mississippi. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Based on the foregoing, the undersigned finds that Plaintiff has failed to demonstrate personal jurisdiction.

### Qualified Immunity

Even if the Court exercised personal jurisdiction over Defendant in this matter, Plaintiff has failed to identify the violation of a constitutional or statutory right. Moreover, the undersigned finds that Defendant is entitled to qualified immunity.

Clerks of court "'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages.'" *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001)

9

(quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)).  A clerk performing routine tasks not explicitly commanded by a court decree or judge's instruction is entitled to qualified immunity from suits.  *Id.*  "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).  To overcome a defense of qualified immunity, a plaintiff must show that the defendant's conduct violated a constitutional right and that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation.  *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010)

To the extent Plaintiff merely complains of the fact that his *in forma pauperis* application has been denied, Defendant is entitled to absolute immunity.  Defendant Atkins did not consider or deny Plaintiff's *in forma pauperis* application.  As reflected in the Supreme Court docket, the nine justices of the United States Supreme Court considered and rejected Plaintiff's application both initially and on reconsideration.  *See* Doc. [54-1] [54-4] [54-6].

Plaintiff asserts that Atkins improperly docketed his "Application to Individual Justice Pursuant to USSC Rule 22" as a "Motion for Reconsideration", somehow resulting in a constitutional harm.  Plaintiff's allegation relates to Defendant's performance of a routine task and thus implicates the defense of qualified immunity.  Liberally construed, Plaintiff asserts that his access to the Supreme Court was denied when Defendant improperly docketed the application as a motion for reconsideration.  However, to the extent Defendant simply enforced the Court's rules of procedure, Plaintiff fails to identify any violation of his statutory or

10

constitutional rights.  See *Wells v. Welborn*, 165 Fed.Appx. 318, 322, 2006 WL 237518 at *2-3 (5th Cir. Jan. 30, 2006).

Ultimately, Plaintiff's reliance on Supreme Court Rule 22 is misplaced.  Rule 21 governs motions to the Supreme Court as a whole, as opposed to applications to individual justices, which are governed by Rule 22.  *See* Rule 21.1 & 22.  Rule 39 governs proceedings *in forma pauperis* generally.  Rule 39.2 directs that a party seeking to proceed *in forma pauperis* for the purpose of filing a document "shall comply in every respect with Rule 21."  Moreover, Rule 21.2(b) specifically references *in forma pauperis* motions.  Hence, the Supreme Court Rules contemplate resolution of *in forma pauperis* motions by all nine justices pursuant to Rule 21 and not as an application to a single justice pursuant to Rule 22.  *See* Stephen M. Shapiro, Kenneth S. Geller et al, *Supreme Court Practice* § 8.5 at 567 (10th ed. 2013) ("Simultaneous distribution of all *in forma pauperis* documents to the nine justices is now routine.").  In the body of the pleading in question, Plaintiff clearly sought reconsideration of the Court's denial of his previously rejected *in forma pauperis* motion.  *See* Doc. [54-5] at 1-14.  Based on the foregoing, the undersigned concludes that Defendant acted reasonably when he docketed the request for reconsideration as a motion for the full Court's consideration rather than, as Plaintiff suggests, as an application to a single justice pursuant to Rule 22.  Once the justices of the Supreme Court denied Plaintiff's *in forma pauperis* application, Atkins, or someone acting on behalf of the Court, closed Plaintiff's case.  Thus, Defendant Atkins' actions were not objectively unreasonable.

Even if Atkins somehow mistakenly, or even maliciously, docketed the subject pleading as a motion to reconsider, Plaintiff fails to identify any prejudice from this action.  To state a denial of access claim, a plaintiff must demonstrate that his position as a litigant has been

prejudiced by the defendant's actions. *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998). Atkins' did not deny Plaintiff's access to the Supreme Court. To the contrary, the Supreme Court as a whole considered Plaintiff's pleading, including the individual justice to whom Plaintiff directed the Rule 22 application. Arguably, he received nine times greater access to justice than his pleading actually sought, because all nine justices considered and denied his application for reconsideration rather than only one justice.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Defendant's [54] Motion to Dismiss and/or for Summary Judgment be GRANTED, that Plaintiff's [59] Motion for Summary Judgment be DENIED, and that Plaintiff's complaint be dismissed with prejudice.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted

by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 11th day of June, 2018.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE